United States District Court
District of Massachusetts

```
_____
                              )
Kendy Delva,                  )
                              )
         Plaintiff,           )
                              )
     v.                       )   Civil Action No.
                              )   25-10564-NMG
Needham Residential, LLC et al, )
                              )
         Defendant.           )
                              )
                              )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

In this case plaintiff Kendy Delva ("plaintiff" or "Delva") claims employment discrimination against defendants Needham Residential, LLC, Needham Residential Member, LLC, Toll Brothers Apartment Living and Toll Brothers, Inc. (collectively, "defendants"). Pending before the Court is defendants' motion to dismiss all except one count of the complaint (Docket No. 14). Because the identified counts are time barred or otherwise fail to state claims upon which relief can be granted, the motion will be allowed.

I. **Background**

   **A. Facts**

   Delva is a Black man of Haitian descent. He was hired by defendants as an Assistant Property Manager in June, 2020, and oversaw operations at the Kendrick, a multi-unit apartment

-1-

-2-

building where he was also a tenant. Erin O'Donnell was the building's Property Manager and plaintiff's direct supervisor.

Delva's complaint alleges that he was subject to racially discriminatory treatment on several occasions. He avers that vendors employed by defendants would often comment on the color of his skin and that O'Donnell took no actions in his defense. He also claims that O'Donnell would often make remarks about how she was surprised by his intelligence and his ability to interact with "market" residents rather than just "affordable" residents. He alleges that he was refused overtime when a colleague, not of Haitian descent, was paid overtime.

Delva's complaint also contains allegations of generally hostile working conditions. He alleges that O'Donnell frequently accused him of slacking off and brought meritless complaints about him to human resources. In May, 2021, Delva was admitted to the hospital because his blood sugar had spiked to pre-diabetic levels, a condition he attributes to his hostile work environment.

Delva voluntarily resigned in June, 2022, but remained a resident of the Kendrick. He was given an offer to renew his lease in August, 2022, with a stated expiration date of October 10, 2022.

After receiving the offer to renew his lease, Delva learned of a Trichloroethylene ("TCE") contamination at the Kendrick and

requested that his unit be tested.[1]  A sample was taken from his unit but before he was informed of the results, Delva received a letter revoking the offer to renew his lease.

Delva was eventually told that his apartment contained high levels of TCE and other harmful chemicals.  Despite being denied renewal of his lease, Delva remained at the Kendrick until January, 2023, when he vacated due to concerns of the chemical contamination.

Delva filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") in February, 2024, asserting discrimination and retaliation claims.  His complaint was dismissed as untimely.

### B. Procedural History

Delva filed a complaint in Massachusetts Superior Court in December, 2024.  It contained nine counts: 1) disparate impact treatment, 2) hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and M.G.L. c. 151B ("Chapter 151B"), 3) retaliatory action by an employer in violation of Title VII and M.G.L. c 149 §148, 4) retaliatory eviction in violation of M.G.L. c. 186, §18, 5) failure of overtime pay in violation of M.G.L. c. 151 §§1A, 19 ("Chapter 151"), 6) constructive discharge, 7) intentional infliction of

---

[1] According to the complaint, TCE is an industrial solvent and toxic gas.

-3-

emotional distress, 8) breach of quiet enjoyment in violation Of M.G.L. c. 186 §14 and 9) breach of warranty of habitability.

In March, 2025, defendants removed the case to this Court on the basis of diversity jurisdiction. In June, 2025, defendants filed the pending motion to dismiss Counts I, II, III, V, VI and VII and plaintiff timely opposed.

## II. Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the plaintiff must state a claim for relief that is actionable as a matter of law and plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### B. Application

#### i. Count I: Disparate Impact

Count I alleges that defendants engaged in disparate impact discrimination against plaintiff based on his race and religion. In order to plead a disparate impact claim, plaintiff must 1) identify the challenged employment practice or policy and defendants' use of it, 2) demonstrate a disparate impact on a group characteristic and 3) demonstrate a causal relationship

-4-

between the identified practice and the disparate impact. E.E.O.C. v. Steamship Clerks Union, Loc. 1066, 48 F.3d 594, 601 (1st Cir. 1995). The identification of a practice or policy must be specific. Mompoint v. Dep't of Elementary & Secondary Educ., No. 18-CV-11094-DJC, 2019 WL 1921631, at *3 (D. Mass. Apr. 30, 2019).

Plaintiff fails to satisfy those requirements. Rather than pinpointing a specific practice or policy, Delva identifies facially neutral commentary and actions of O'Donnell that Delva believes to have been rooted in racial discrimination. And to the extent that Delva claims he was denied overtime while other non-Haitian employees were not, he has failed to identify a practice or policy by which such discrimination was perpetrated. Defendants' motion to dismiss Count I will therefore be allowed.

### ii. Count II: Hostile Work Environment

Count II asserts a claim for a hostile work environment under Chapter 151B and Title VII. Defendants move to dismiss the claim as time barred, arguing that plaintiff failed to timely raise the claim at the MCAD or the Equal Employment Opportunity Commission ("EEOC") before filing the complaint. Such exhaustion is required for claims brought under Chapter 151B and Title VII. See Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994) (discussing Chapter 151B exhaustion); Frederique-Alexandre v. Dep't of Nat. & Env't Res. Puerto Rico,

-5-

478 F.3d 433, 437 (1st Cir. 2007) (discussing Title VII exhaustion).

Plaintiff has not met his exhaustion requirement. Chapter 151B requires that a complaint be made to MCAD within 300 days of the act of discrimination. M.G.L. ch. 151B §5. Despite plaintiff's confusing contentions to the contrary, the complaint makes clear that the parties' employment relationship ended on June 2, 2022. Plaintiff filed his complaint with the MCAD on February 27, 2024, more than 20 months after any discrimination could have occurred and without ever having filed a complaint with the EEOC. Defendants' motion to dismiss Count II will therefore be allowed.

### iii. Count III: Retaliatory Action by Employer

Count III alleges that defendants refused to renew plaintiff's lease in retaliation for his resignation and demand that his apartment be tested for contamination, in violation of Title VII and M.G.L. c 149 §148.

Plaintiff's employment with defendants ended in June, 2022, and his notice of nonrenewal was issued in August, 2022. Because relief under both Title VII and M.G.L. c 149 §148 requires an active employment relationship between the parties, defendants' motion to dismiss Count III will be allowed.

### iv. Count V: Failure of Overtime Pay

Plaintiff alleges that defendants failed to pay him overtime pay in violation of Chapter 151. Defendants seek dismissal based upon the two-year statute of limitations in Chapter 151. That allegation is in error because the statute of limitations under Chapter 151 is three years.

Nevertheless, plaintiff's claim is untimely. Delva was denied overtime pay in November, 2020. His claim was filed more than four years later in December, 2024. Defendants' motion to dismiss Count V will therefore be allowed.

### v. Count VI: Constructive Discharge

To state a claim for constructive discharge, plaintiff must allege that discrimination made his working conditions so intolerable that a reasonable person in his position would feel the need to resign. Green v. Brennan, 578 U.S. 547, 555 (2016). It is insufficient that working conditions were difficult or unpleasant. Rather, the plaintiff must show that conditions were so harsh as to effectively deprive him of his opportunity to make a free choice regarding his employment. Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 50 (1st Cir. 2008).

The complaint fails to allege any such harsh employment conditions. At most, plaintiff describes a working environment that was unfulfilling or unpleasant but certainly not hostile to

the point of constructive discharge. Defendants' motion to dimiss Count VI will therefore be allowed.

### vi. Count VII: Intentional Infliction of Emotional Distress

Plaintiff avers that his treatment by defendants amounted to intentional infliction of emotion distress ("IIED"). Defendants move to dismiss that claim on the grounds of preemption under state law.

The Massachusetts Workers' Compensation Act ("MWCA") is the exclusive remedy in Massachusetts for personal injury claims against an employer. M.G.L. ch. 152 §26. This exclusivity bar includes emotional distress claims. McCarty v. Verizon New England, Inc., 674 F.3d 119, 122 (1st Cir. 2012). Defendants' motion to dismiss Count VII will therefore be allowed.

### ORDER

For the forgoing reasons, defendants' motion to dismiss the complaint in part (Docket No. 14) is **ALLOWED** and Counts I, II, III, V, VI and VII are **DISMISSED**.

**So ordered.**

                                                           _/s/ Nathaniel M. Gorton_
                                                           Nathaniel M. Gorton
                                                           Senior United States District Judge

Dated: December 23, 2025